James SANTIAGO, Plaintiff-Appellant,

v.

Russel LEIK, and Jose Lloren, Defendants-
Respondents.†

Court of Appeals

*No. 92–0413. Oral argument September 29, 1992.—Decided
October 28, 1993.*

(Also reported in 508 N.W.2d 456.)

†Petition to review filed.

For the plaintiff-appellant the cause was submitted on the brief of *Jeff Scott Olson* of *Julian, Olson & Lasker, S.C.* of Madison.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Frank D. Remington,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Jaime Santiago, an inmate in the Wisconsin correctional system, appeals from a judgment dismissing his complaint against Dr. Jose Lloren, a prison doctor at Columbia Correctional Institution (CCI), and Russel Leik, classification chief for the bureau of adult institutions within the division of corrections. We reverse.

Santiago seeks damages under 42 U.S.C. § 1983. He asserts that from October 20 to November 23, 1987, while he was an inmate at CCI, Dr. Lloren and Leik violated his eighth amendment and fourteenth amendment right to be free from cruel and unusual punishment.

It is undisputed that Santiago has amyotrophic lateral sclerosis (ALS), also known as Lou Gehrig's disease, part of the treatment for which is good nutrition. ALS patients have eating problems caused by hand and arm weakness and increasing weakness of the tongue and of facial, jaw and throat muscles used to eat and swallow. Eating problems related to weakness of the hands and arms are managed by use of special devices or by having other persons feed the patient.

789

Eating problems related to the chewing and swallowing muscles are dealt with initially by using soft foods. Because ALS has no known cure, treatment consists of establishing a nutritional regimen to maintain the patient's nutritional needs and weight, medications to relieve muscle cramping and spasms, and physical therapy and aids to help the patient cope with the gradual loss of motor function.

By October 20 Santiago's ALS had made it difficult for him to eat without assistance. On November 23, he was transferred to Waupun Correctional Institution (WCI). He asserts that by failing to have adequate measures taken to feed him at CCI, Dr. Lloren was deliberately indifferent to his serious medical needs and therefore subjected him to cruel and unusual punishment. He asserts that until November 23, Leik was deliberately indifferent to his serious medical needs in that Leik did not transfer him to WCI, where he could receive assistance in eating, even after being apprised that CCI had failed to make adequate provision for his feeding.

Dr. Lloren and Leik moved for summary judgment dismissing the complaint on grounds that they are qualifiedly immune from suit and on the merits. The trial court dismissed the complaint on grounds that Lloren and Leik are qualifiedly immune. The trial court did not rule on the merits. Santiago appeals. We conclude that Lloren and Leik are not immune from this suit. The judgment dismissing the complaint must be reversed and the matter remanded for further proceedings on the pending motion for summary judgment.

Summary judgment is an appropriate procedure to determine whether a public official is qualifiedly

immune from suit in a sec. 1983 action. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Summary judgment methodology is too well known to require repeating. An appellate court employs the same methodology as does the trial court. *Anderson v. Green Bay & W. R.R.*, 99 Wis. 2d 514, 516, 299 N.W.2d 615, 617 (Ct. App. 1980).

██

One purpose of qualified immunity is to spare a public official, "not only unwarranted liability, but unwarranted demands customarily imposed upon those defending" a lawsuit. *Siegert v. Gilley*, 500 U.S. 226, —, 111 S.Ct. 1789, 1793 (1991). For that reason, the first inquiry should be whether the plaintiff has alleged a violation of a constitutional or federal right. The second question is whether the plaintiff has alleged the violation of a constitutional right that was clearly established at the time of the defendant's actions. *Id.* at —, 111 S.Ct. at 1793. The two-step analysis "permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Id.*

Santiago's lawsuit has undergone considerable changes since it was first filed in 1987, prior to his transfer to WCI. At that time he filed a *pro se* complaint, alleging that Dr. Lloren and Leik had denied him the diet, physical therapy, drug therapy, and counseling recommended for persons suffering from ALS and had refused to move him to a facility where adequate medical care could be provided. He alleged they were deliberately indifferent to his serious medical needs, and had violated his eighth amendment right not to suffer cruel and unusual punishment.

In March 1989 Santiago filed an amended complaint prepared by counsel. That complaint contained allegations to the effect that Dr. Lloren failed to provide Santiago with the level of medical care meeting the basic minimum standards for ALS patients in the advanced stages of the disease, in that he was not provided with physical therapy, counseling, adequate drug therapy, an adequate diet and twenty-four hour per day nursing care. The claim covered the period August 27, 1987, when Santiago was first transferred to CCI, through November 1987 when he was transferred to WCI. The complaint alleged that Leik had authority to transfer Santiago to an appropriate Wisconsin facility and had not done so until November 1987.

By the time the trial court granted summary judgment dismissing Santiago's complaint, Santiago had refined the theory of his case. First, he no longer claimed he was not provided with physical therapy, counseling or adequate drug therapy. He claimed that by failing to provide him with assistance in eating, Dr. Lloren failed to ensure that he had an adequate diet to provide him with the nutrition he needed as part of the medical treatment required for a person in the advanced stages of ALS, and was deliberately indifferent to his serious medical needs. Leik, knowing that Santiago was not receiving eating assistance which ultimately resulted in his failure to obtain adequate medical care, was deliberately indifferent to his serious medical needs in that Leik failed to transfer him to WCI where that assistance and care could be provided. Second, Santiago reduced the period of claimed deliberate indifference to October 20 through November 23, 1987. The period begins October 20 because from then on, he asserts, it was clear that he could not feed himself. He ends with November 23 because on that day he

792

was taken from CCI to a hospital and subsequently transferred to WCI.

Santiago's amended complaint states his case less precisely than he now describes it, but that pleading defect has never been raised by the state. We therefore examine Santiago's refined theory to determine whether it alleges a constitutional violation. We conclude that it does.

A constitutional violation based upon an eighth amendment prison claim has an objective component (was the deprivation sufficiently serious?) and a subjective component (did the official act with a sufficiently culpable state of mind?). *Wilson v. Seiter*, 501 U.S. —, —, 111 S.Ct. 2321, 2324 (1991). Deprivation of medical treatment for a serious medical need satisfies the objective component of an eighth amendment prison claim. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).

The subjective component of an eighth amendment prison claim is whether the official acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at —, 111 S.Ct. at 2324. The *Estelle* court established the nature of that subjective component: deliberate indifference. The *Estelle* court concluded:

> that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical [sic] or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate

> indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Santiago asserts the kind of eighth amendment violation described by the *Estelle* court. If, as he claims, through deliberate indifference[1] Dr. Lloren did not provide him with eating assistance so he could obtain the nutrition required as part of the treatment of his serious medical condition, then Dr. Lloren, as the prison doctor, subjected him to an eighth amendment violation. If, as he claims, Leik knew Santiago was not obtaining that assistance at CCI, and Leik, through deliberate indifference, failed to transfer him to WCI where he could have the assistance he needed, then Leik, too, subjected Santiago to an eighth amendment violation.

Because Santiago asserts an eighth amendment violation, we reach the second step in the *Siegert* analysis. The second step inquires whether the law at the time of the claimed violation, October 20 through November 23, 1987, clearly established that the defendants' actions constituted a violation. *Siegert*, 500 U.S. at —, 111 S.Ct. at 1793. This is because qualified immunity attaches to the conduct of public officials which does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time. *Harlow*, 457 U.S. at

---

[1] For cases applying the deliberate indifference standard to eighth amendment violations involving medical care for inmates, *see LaFaut v. Smith*, 834 F.2d 389 (4th Cir. 1987); *Henderson v. DeRobertis*, 940 F.2d 1055, 1060 (7th Cir. 1991), *cert. denied*, 112 S.Ct. 1578 (1992); *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); and *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

818. Put in positive terms, the question is "whether the public official's actions [at the time] could reasonably have been thought consistent with the constitutional right." *Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 508 (5th Cir. 1992).

Thus, if at the time the challenged act occurred the law identifying the act as a constitutional violation was not clearly established, qualified immunity protects the official from suit. The official cannot fairly be said to "know" that the law forbade conduct not previously identified as unlawful. *Harlow*, 457 U.S. at 818. If the law was clearly established, the immunity defense fails, since a reasonably competent public official is held to know the law governing his conduct. *Id.* at 818-19.

The "clearly established law" issue turns on objective factors. *Id.* It is itself a question of law. The official's subjective state of mind is irrelevant to the issue. *Davis v. Scherer*, 468 U.S. 183, 193 (1984).

The Wisconsin Supreme Court struggled with the "clearly established law" test in *Barnhill v. Board of Regents*, 166 Wis. 2d 395, 479 N.W.2d 917 (1992). The plaintiff, Barnhill, claimed that the directors of a University of Wisconsin survey research laboratory violated his first amendment right of free speech when they discharged him for revealing to newspapers the questions in a survey. The defendant directors claimed qualified immunity.

The *Barnhill* court noted that confusion regarding qualified immunity "derives from the level of generality that should be afforded to 'clearly established law' at the time of the alleged unlawful act." *Id.* at 407, 479 N.W.2d at 921. The *Barnhill* court resolved for its purposes the nature of the "clearly established law" it

795

had to examine. It looked for "existing case law" with facts closely corresponding to those before the court. *Id.* at 408-09, 479 N.W.2d at 922.

Relying on *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987), the *Barnhill* court held that, "the 'clearly established law' does not have to specifically correspond with every facet of the present situation. Rather, the 'clearly established law' must be sufficiently analogous to provide the public official with guidance as to the lawfulness of his or her conduct." *Barnhill*, 166 Wis. 2d at 408, 479 N.W.2d at 922. However, the first amendment issue on which the lawfulness of plaintiff Barnhill's discharge depended involved a difficult balancing of interests required by *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). *Barnhill*, 166 Wis. 2d at 409, 479 N.W.2d at 922. For that reason, the *Barnhill* court concluded that "the facts of the existing case law must closely correspond to the contested action before the public official is subject to liability." *Id.* After reviewing the case law, the *Barnhill* court declared itself "unconvinced that the law in 1985 [when Barnhill was discharged] clearly established that Barnhill's interests outweighed those" of the defendants and the defendants were therefore entitled to qualified immunity. *Id.* at 414, 479 N.W.2d at 925. Exercising its "lawmaking" function, the *Barnhill* court then analyzed the merits of the plaintiff's first amendment claim. *Id.* at 416-17, 479 N.W.2d at 426.[2]

---

[2] The *Barnhill* court went directly to the facts to determine whether qualified immunity existed, probably because the immunity issue was determined after a full trial. Indeed, a jury found that defendants violated plaintiff's first amendment rights when they fired him, and immunity was decided on appeal. *Barnhill*, 166 Wis. 2d at 416-17, 479 N.W.2d at 925-26. Had the *Barnhill* trial court first decided the immunity issue on

Unlike the plaintiff's first amendment claim in *Barnhill*, Santiago's claim does not require a balancing of interests. The United States Supreme Court established that deliberate indifference to the serious medical needs of a prisoner violates the eighth amendment. *Estelle*, 429 U.S. at 104. Deliberate indifference to a prisoner's serious medical needs "can typically be established or disproved without the necessity of balancing competing institutional concerns for the safety of prison staff or other inmates." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Since Santiago suffers from a serious medical condition, and treatment of the condition includes adequate nutrition, *Estelle* establishes that deliberate indifference in failing to provide that nutrition is an eighth amendment violation. It follows inexorably that if a prisoner needs and is furnished adequate nutrition as part of his medical treatment but cannot feed himself, deliberate indifference to his need for feeding assistance violates the eighth amendment.[3] And if he cannot obtain that assistance in one prison

---

a motion for summary judgment, and the losing party appealed or petitioned for leave to appeal, the trial would have been avoided. Such avoidance is the purpose of qualified immunity. *Siegert*, 500 U.S. at —, 111 S.Ct. at 1793. The law the *Barnhill* court announced in its "lawmaking" function would have been covered in the first step of a *Siegert* analysis, and that analysis would have provided precedent for the next case in which the "clearly established law" issue arises.

[3] The nutritional adequacy of the food itself is not the issue in the case before us. A prisoner has a right to nutritionally adequate food. *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). Even if the prison had provided Santiago with a cornucopia of food, his inability to put food in his mouth, chew it and swallow it meant that, without assistance, he could not receive the nourishment that was part of his medical treatment.

but can receive it in another, deliberate indifference in failing to effect his transfer violates the eighth amendment.

*Estelle* was decided in 1976, long before the events on which Santiago's claim is based. That decision was clearly established law in the fall of 1987. A prison doctor and a prison administrator should have known in 1987 that *Estelle* condemns deliberate indifference to a prisoner's need for treatment for a serious medical condition.

We conclude that neither Dr. Lloren nor Leik are immune from Santiago's suit. We reverse and remand for further proceedings.

*By the Court.*—Judgment reversed and matter remanded for further proceedings consistent with this opinion.