Claudia R. CODY Plaintiff-Appellant,

v.

DANE COUNTY, Cpt. J. Norwick, and Lynn Almquist,
Defendants-Respondents.

Court of Appeals

*No.  00–0549.  Submitted on briefs December 7, 2000.—Decided
January 25, 2001.*

## 2001 WI App 60

(Also reported in 625 N.W.2d 630.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Bronson C. La Follette* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Moore* and *Sheila M. Sullivan* of *Bell, Gierhart & Moore, S.C.*, Madison.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Claudia Cody appeals an order granting summary judgment of dismissal of her 42 U.S.C. § 1983 (1997) claim against Joseph Norwick and Dane County.[1] She argues that the trial court erred in dismissing her claim because "a reasonable trier of fact could find that [Norwick] was deliberately indifferent" to her "serious medical needs." We agree and reverse the appealed order.

## BACKGROUND

¶ 2. This case is before us on summary judgment. The parties do not dispute that Cody's complaint stated a cause of action or that Norwick's answer joined issue. Our factual summary, therefore, is taken from the parties' submissions on summary judgment, which we view in the light most favorable to the nonmoving party, in this case, Cody. *See State Bank of La Crosse v.*

---

[1] We will refer to the defendants-respondents, collectively, as "Norwick." We also note that the caption includes an additional defendant-respondent, Lynn Almquist, who apparently is not an employee of Dane County but provided medical services to inmates of the Dane County Jail under a contract with the county. It does not appear that Cody served Almquist with her summons and complaint, or that Almquist participated in any trial court proceedings. Accordingly, we do not address Cody's allegations involving Almquist in this opinion.

*Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (Ct. App. 1986).

¶ 3.   Cody was an inmate at the Dane County Jail from November 11, 1996 until June 20, 1997. On or about April 28, 1997, she experienced pain in an abscessed tooth and her private dentist recommended that she receive antibiotics and a root canal. Cody's private dentist believed she could have serious heart problems if the abscessed tooth remained untreated. On May 22, the attorney who represented Cody in pending criminal matters drafted a motion requesting an order for her release from jail to visit her private dentist, and the court entered the order on May 27. Cody's attorney personally delivered the order to the sheriff's department on May 27th because her dental appointment was scheduled for the next morning.

¶ 4.   The sheriff's department did not release Cody for the May 28th appointment because of its policies that (1) detainees cannot set their own outside appointment times for security reasons, and (2) a jail dentist must first examine the detainee to determine whether the procedure can be performed at the jail before an appointment is scheduled with a private dentist. Alternatively, the May 27th court order may not have been carried out because appropriate jail officials did not receive the order prior to the scheduled appointment. On June 4th, a dental technician examined Cody at the jail and recommended that she receive prescribed medication until she could have a root canal in prison or with her private dentist. An appointment for a root canal was scheduled with Cody's private dentist for June 23. At Cody's sentencing on June 13th, the court ordered that she be allowed to make the dental visit.

¶ 5. Norwick, a sheriff's department captain who supervised jail operations during the relevant time period, first became aware of Cody's dental condition on June 16th. Cody was transferred to Dodge Correctional Institution on June 20, 1997, three days prior to the scheduled dental appointment. Prior to Cody's transfer, Captain Norwick had advised the sentencing judge that Cody did not have a dental appointment scheduled for a date prior to her impending transfer, and that she could receive the necessary dental work in prison. The judge later wrote Cody that "[b]ased upon those representations, I authorized your transfer so that you could commence your prison sentence." In his responses to Cody's interrogatories, Norwick provided the following basis for his statements to the judge:

25. Did you and/or your department speak to Judge Schwartz regarding the June 13, 1997, court order after its issuance? If so, state the nature of that conversation.

RESPONSE: Yes. Claudia Cody was no longer the responsibility of Dane County Jail and was scheduled for transportation to Wisconsin Department of Corrections.

26. Did you ever make statements to Judge Schwartz that plaintiff could receive the proper care in prison for her dental condition?

RESPONSE: Yes.

. . . .

28. Did you ever check with the prison system prior to making statements that Ms. Cody could receive proper care. and treatment once in prison, before telling that to Judge Schwartz?

RESPONSE: Yes.

29. If you did check with the prison system regarding the specialized care and treatment Ms. Cody would require from the prison dental units, with whom did you speak with [sic] and at what institution?

RESPONSE: I have toured Dodge Correctional and other institutions and have viewed the available dental care units.

¶ 6. Cody alleged in her complaint that prison dentists were unwilling to perform a root canal; that she did not obtain the necessary dental work until March 1998; and that as a result of the delay in receiving the necessary treatment, she was required to undergo more extensive dental work and "suffered severe and prolonged pain, weight-loss, malnutrition, and serious digestive problems." Cody alleged that Norwick violated her "Fifth, Eighth, Ninth, and Fourteenth Amendment" rights when he refused to follow the two court orders that she obtain necessary dental work prior to her transfer from the Dane County Jail. The trial court treated Cody's claims as an action under 42 U.S.C. § 1983 and granted summary judgment to Norwick because it concluded that there was no support in the record for her claim that Norwick was "deliberately indifferent to her dental problem or that he ignored a substantial risk of harm to her." Cody appeals the order dismissing her claims.

## ANALYSIS

¶ 7. We first note that Cody named both Dane County and Captain Norwick as defendants in this action. The trial court concluded that she had not established that the County had adopted or implemented any custom or policy which violated her constitutional rights. *See Hillman v. Columbia County,*

164 Wis. 2d 376, 404, 474 N.W.2d 913 (Ct. App. 1991) ("Respondeat superior may not serve as the basis for imposing § 1983 liability. . . . To maintain an action against [a c]ounty, [plaintiff] must show that the actions that are alleged to be unconstitutional implement or were taken pursuant to a municipal policy or custom." (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978))). Cody does not take issue with this conclusion in her opening brief, and we deem any claim of error regarding the trial court's dismissal of her claims against the County abandoned.[2]

---

[2] Norwick noted in his response brief Cody's failure to address the dismissal of her claims against the County, and accordingly, he addressed only her arguments regarding her claims against him. Cody attempts in her reply brief to rehabilitate a claim of error regarding the dismissal of her action against the County. We reject the effort. First, it comes too late. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981). Second, to the extent that Cody's arguments regarding county liability on her claim rest on a respondeat superior theory, they are without merit. *See Hillman v. Columbia County*, 164 Wis. 2d 376, 404, 474 N.W.2d 913 (Ct. App. 1991). Finally, her assertion that she put forward sufficient facts "to support an inference that Dane County maintained an unconstitutional custom or policy which allowed a delay in treating her condition for an unreasonable period of time" is also without merit. Both her and Norwick's submissions on summary judgment showed that Dane County routinely provided medical and dental care and evaluations to inmates in general and to Cody in particular. Moreover, the record shows that the County had in place a policy for making and transporting inmates to outside medical appointments. The fact that the policy may have been misapplied or violated with respect to her dental problem, as she alleges in her complaint, does not render the policy itself defective.

¶ 8. We note next that although Cody cites several constitutional provisions in her complaint, her arguments on appeal relate only to a claimed violation of her Eighth Amendment right to be free from cruel and unusual punishment. Accordingly, we address only whether the trial court erred in dismissing her Eighth Amendment claim against Norwick on summary judgment.

¶ 9. 42 U.S.C. § 1983 provides a federal cause of action against one who deprives another of a constitutionally guaranteed right. Cody claims that Norwick violated her constitutional right to be free from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. Cruel and unusual punishment includes the unnecessary and wanton infliction of pain by prison guards. *See Whitley v. Albers,* 475 U.S. 312, 319 (1986). Eighth Amendment protection also extends to the denial of medical care. *See Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).

¶ 10. In order to prevail, an inmate must establish that a serious medical need was ignored, and that the prison officials were deliberately indifferent to the prisoner's condition. *See Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir. 1997); *Santiago v. Leik,* 179 Wis. 2d 786, 793, 508 N.W.2d 456 (Ct. App. 1993). A "serious medical need" means that the illness or injury is sufficiently serious or painful to make the refusal of assistance uncivilized, and it should not be of the type for which people who are not in prison do not seek medical attention. *See Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996). "Deliberate indifference" implies "an act so dangerous that the defendant's knowledge of the risk [of harm resulting from the act] can be

inferred." *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985).

¶ 11.   We review summary judgment de novo, applying the same standard as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984); WIS. STAT. § 802.08(2). We view the facts in the light most favorable to the nonmoving party. *State Bank of La Crosse*, 128 Wis. 2d at 512.

¶ 12.   We agree with Cody that the record on summary judgment is sufficient to create a jury issue as to whether, in June 1997, she had a serious medical need, specifically, an abscessed tooth that required prompt and appropriate treatment by qualified dental personnel. *See, e.g., Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) ("[C]laims that Gander knew of the pain he was suffering . . ., observed swelling in Fields' face, and still refused to provide dental care for him for up to three weeks . . . could support a finding of an eighth amendment deprivation in violation of section 1983."). Cody's dentist wrote to jail medical personnel that "it is pretty obvious that she has an abscess on the upper left cuspid tooth, which is causing her great pain. She should be on antibiotics and she will need a root canal on that tooth." The record also establishes that an antibiotic was prescribed and provided to Cody while she remained at the jail, and that on June 16th, jail personnel scheduled an outside dental appointment for Cody for the 23rd of June.

¶ 13. We consider next the facts in the record relating to whether Norwick acted with deliberate indifference toward Cody's medical needs. Norwick's culpability, if any, cannot be based on a failure by Department of Corrections (DOC) personnel to provide her with appropriate dental care following her transfer to DOC custody on June 20, 1997. From that date forward, prison officials, not Norwick, controlled Cody's access to medical treatment.[3] By the same token, Norwick cannot be deemed to have been deliberately indifferent to Cody's medical needs prior to his first becoming aware of them on June 16th. That is, even if, as a jail supervisor, Norwick *should* have been aware of the circumstances and taken appropriate actions earlier than June 16th, that is not the type of subjectively reckless conduct necessary to support an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 835–38 (1994) (concluding that "deliberate indifference" requires "a state of mind more blameworthy than negligence," and something more than "civil-law" or "objective" recklessness: "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

¶ 14. Thus, the critical question is whether the record evinces a factual dispute regarding whether Captain Norwick was "deliberately indifferent" to

---

[3] Cody argues that the delay in her receiving appropriate treatment while she was in prison from June 1997 until March 1998 is relevant to the damages she suffered. While this may be so, Norwick's liability for any of Cody's alleged damages must stem from *his* "deliberate indifference" to her medical needs, not that of prison officials who acted or failed to act following her transfer on June 20, 1997.

Cody's medical needs when, after being informed of the circumstances on June 16th, he took steps to accomplish her transfer to Dodge Correctional Institution on June 20, before she could keep the dental appointment scheduled for her three days later.

¶ 15. The Supreme Court in *Farmer* discussed at length the "sufficiently culpable state of mind," 511 U.S. at 834 (citation omitted), applicable to Eighth Amendment cases involving prison conditions (as opposed to the state of mind required in application of physical force cases, which is malice, or purposeful or knowing conduct, *id.* at 835–36). The Court concluded that a showing of "subjective recklessness" on the part of prison officials was required in order to establish their "deliberate indifference" to a substantial risk of serious harm to an inmate. *See id.* at 837–47. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Cody need not establish that Norwick acted or failed to act, believing that harm would actually come to her, but that he did so "despite his knowledge of a substantial risk of serious harm" to her. *See id.* at 842. Norwick's state of mind is a question of fact, and one which can be proven by inference from circumstantial evidence, including the obviousness of the risk. *See id.*

¶ 16. By the same token, Norwick may defend against Cody's claim of deliberate indifference to her medical needs by showing that he was unaware of the risk to her health, either because he did not know all of the underlying facts, or if he knew them, he believed "the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. And, even if Norwick appreciated that her abscessed tooth presented a substantial

risk to Cody's health, he "may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted. . . . [P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 844–45.

¶ 17.    Cody argues that a jury could conclude that Norwick acted with "the requisite culpable state of mind," summarizing the record as follows:

> [Norwick] knew that her dentist had written to the jail advising of her need for immediate treatment and the potential danger which could be caused by delay. . . .
>
> Since the jail dentist had authorized [Cody]'s appointment with [her dentist], he knew that, according to the jail policy, she could not be treated for her condition by the jail dentist. He did not discuss [Cody]'s abscessed tooth and the need for a root canal with anyone at Dodge or anyone else in the prison system prior to his meeting with the Judge on June 20th. He knew that Judge Schwartz had issued two court orders ordering the jail to set up dental appointments for [Cody]. On June 20th . . . [Norwick] told the Judge that she could receive proper treatment for her condition in the prison system without confirming that fact with any prison medical official at Dodge or anywhere else.[4]

---

[4] Cody also claims the record shows that Norwick "intentionally deceived" Judge Schwartz regarding the date of her scheduled dental appointment. We disagree. There is some confusion in the various submissions as to the date of the appointment, which was apparently scheduled for June 23rd at noon. Both Judge Schwartz and Cody's dentist refer in correspondence to the appointment as having been set for June 24th. If, as Cody claims, Norwick did tell Judge Schwartz that the appointment was set for the 24th instead of the correct June

We agree that Cody presented sufficient facts to create a factual dispute regarding Norwick's state of mind during the relevant period, June 16 through 20, 1997.

¶ 18.   We conclude that a jury could reasonably infer from the facts presented that Captain Norwick was actually aware that a delay in Cody's receipt of appropriate dental care for her abscessed tooth could result in serious harm to her health, and also that he was aware of a substantial risk of that harm occurring if she were transferred to prison before keeping her scheduled dental appointment. We also conclude that a jury could conclude that Norwick did not reasonably respond to the risk by relying on his having "viewed the available dental care units" at prisons as a sufficient basis to inform Judge Schwartz that Cody's dental needs could be met in prison. We acknowledge that there is nothing in the record to indicate that Norwick knew or believed that Cody would be unable to obtain necessary dental work in prison, but as we have discussed, such knowledge or belief is not a prerequisite for a finding of "deliberate indifference"—awareness of a substantial risk that her treatment needs would not be promptly or adequately met in prison is sufficient. *See Farmer*, 511 U.S. at 847 ("[A] prison official may be

---

23rd date, we fail to see how this could form the basis for an inference that Norwick was intentionally attempting to deceive the judge. The relevant point is that the appointment was set for a date after Cody's scheduled transfer to prison on June 20th. It is simply not reasonable to infer that Norwick thought he would have a better chance of persuading the judge to authorize the transfer on June 20th by telling the judge, falsely, that the appointment was set for four days later instead of just three. The only reasonable inference is that if the wrong date was in fact communicated to Judge Schwartz, it was an inadvertent—and immaterial—error on Norwick's part.

held liable under the Eighth Amendment for denying humane conditions of confinement . . . if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

¶ 19. We emphasize that we do not conclude that the present record entitles Cody to summary judgment on the issue of Norwick's liability for her damages, and we express no view as to the likelihood of Cody prevailing on the issue at trial. The outcome may well depend on the jury's determinations regarding the parties' credibility, inferences it chooses to draw regarding what Norwick knew regarding Cody's condition and the availability of adequate dental services in prison, and its assessment of the reasonableness of Norwick's actions. These are not determinations that we or the trial court may make on summary judgment:

> On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact. A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy; some courts have said that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment.

*Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

¶ 20. Norwick argues, however, that we should affirm the dismissal of Cody's claims against him because he is entitled to "qualified immunity" for his actions. We disagree. Norwick's entitlement to quali-

fied immunity is a question of law. *Barnhill v. Board of Regents*, 166 Wis. 2d 395, 406, 479 N.W.2d 917 (1992). We acknowledge that government officials are shielded from civil liability for discretionary actions taken in the performance of their duties unless (1) the right violated was clearly established by analogous case law, or (2) the conduct was so plainly egregious that the official ought to have known his conduct was improper. *See Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). We conclude that the first exception applies: the law was clearly established in June 1997 that the government is obligated "to provide medical care for those whom it is punishing by incarceration," and that a prison or jail official violates the Eighth Amendment if he or she acts with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).[5]

---

[5] In his argument claiming qualified immunity, Norwick implies that his obtaining the court's permission to transfer Cody somehow immunizes his conduct. In this regard, Cody misapprehends the concept of qualified immunity in the § 1983 context. The determinative legal question regarding qualified immunity is not whether Norwick reasonably believed his actions were lawful, but whether the law regarding Cody's rights was clearly established, such that "a reasonably competent public official should have known that the conduct was or was not lawful." *Barnhill v. Board of Regents*, 166 Wis. 2d 395, 407, 479 N.W.2d 917 (1992). Moreover, we note that the court's permission to transfer Cody before her appointment could be kept was expressly based on Norwick's representations regarding Cody's condition, the timing of her dental appointment, and the availability of adequate dental services in prison. If Norwick acted with deliberate indifference to Cody's medical needs in making those representations, the fact that the court then authorized her transfer cannot immunize Norwick from liability.

## CONCLUSION

¶ 21. For the reasons discussed above, we reverse the appealed order and remand for further proceedings in the circuit court not inconsistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

We also note that Cody argues Norwick had a "ministerial duty" to follow Dane County's policies and procedures for obtaining outside medical care for jail inmates, and thus he cannot claim "discretionary" immunity for his actions. "Discretionary," or "public officer immunity," however, is a concept relevant only to state-law negligence claims. *See* WIS. STAT. § 893.80(4); *Felder v. Casey*, 487 U.S. 131 (1988). Cody has neither pleaded nor argued a state law claim, and we do not further address this argument.