William Love, Plaintiff,

v.

Kattie Smith,
Defendant-Third-Party Plaintiff-Appellant,

v.

Housing Authority of the City of Milwaukee, in
its capacity as a body corporate and politic,
Third-Party Defendant-Respondent.

Kattie Smith, Plaintiff-Appellant,

v.

Housing Authority of the City of Milwaukee,
Defendant-Respondent.

Court of Appeals

*Nos. 2014AP1790, 2015AP186. Submitted on briefs
September 8, 2015.—Decided December 22, 2015.*

2016 WI App 3

(Also reported in 875 N.W.2d 131.)

On behalf of the defendant-third-party plaintiff-appellant and plaintiff-appellant, the cause was sub-

mitted on the briefs of *Mark A. Silverman* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joseph M. Wirth* and *Matthew L. Granitz* of *Piper, Schmidt & Wirth*, Milwaukee.

Before Curley, P.J., Brennan, J., and Daniel L. LaRocque, Reserve Judge.

¶ 1. CURLEY, P.J. In this consolidated appeal, Kattie Smith appeals the trial court's grant of summary judgment to the Housing Authority of the City of Milwaukee (HACM) as the third-party defendant in the eviction case and the denial of her writ of certiorari brought against HACM.[2] Because the trial judge correctly granted summary judgment to HACM as the third-party defendant in the eviction action, which dismissed the action as to HACM, and issue preclusion operates to defeat Smith's writ of certiorari, we affirm.

### BACKGROUND

¶ 2. The disputes between Smith and HACM had their origin in Smith's failure to pay her water bill at her previous residence located at 4445 North 45th Street in Milwaukee. HACM was providing rent assistance for Smith at that residence. In addition, Smith received a rent reduction of $62 per month that was intended to be applied to her water bill. It was not paid. Several notices were sent to Smith by HACM advising her that her water bill of $640.97 on the 45th Street property was past due, and if not paid in full, "[f]ailure to pay all past due utility charges will result

---

[2] William Love, the plaintiff in the eviction action, is not a party to this appeal.

in questioning your continued eligibility for the Program and possible termination of the HAP contract." Smith still failed to pay any of the overdue water bill.

¶ 3. As a result, HACM explained in a notice sent to Smith that she was in violation of federal regulation 24 C.F.R. § 982.404 for a breach of a Housing Quality Standard. On December 9, 2013, HACM sent a letter to Smith stating that she had failed to remedy the breach by the deadline of December 4, 2013, and a hearing was scheduled for December 19, 2013, to determine if Smith was eligible for continued participation in the Rent Assistance Program. The notice stated that, as a result of the breach, her Housing Assistance Contract would likely be terminated on February 28, 2014. Her current landlord, William Love, was also sent a notice from HACM that Smith was in the process of being questioned by the program and, if terminated, HACM would no longer be paying any rent assistance on behalf of Smith.

¶ 4. A hearing was held by an independent hearing examiner. At the hearing, which Smith attended, it was established that Smith's lease at the 45th Street property required Smith to pay the water bill of $640.97. Smith acknowledged she did not pay the water bill, which was added to the owner's tax bill. She explained that she did not pay it because she had break-ins at her house, causing damage to the house, and her car was stolen from in front of her house, which increased her expenses. She also felt the water bill was too high. The hearing officer found that Smith had "failed to follow HUD regulations listed in the Urgent Notice of Tenant [H]ousing Quality Standards Breach/Defect dated 12/9/2013." That determination was confirmed in a letter sent to Smith on January 17, 2014, and on February 28, 2014, Smith was termi-

nated from the Rent Assistance Program. Effective the same day, HACM canceled the contract with Love.

¶ 5. On February 20, 2014, before the effective date of her termination from the Rent Assistance Program, Smith filed a writ of certiorari against HACM. Judge John DiMotto was assigned to the case. In the suit, Smith maintained that the hearing examiner's decision was wrong because there was no Housing Quality Standards breach, as the water to her old residence was never turned off and there were mitigating circumstances. She sought to have the administrative determination reversed and to be immediately issued a housing voucher or certificate. HACM filed an answer arguing that Smith violated the Housing Quality Standards when she failed to pay the water bill. Both parties filed briefs.

¶ 6. Meanwhile, on April 17, 2014, William Love commenced an eviction action against Smith because Smith failed to pay her rent. Smith leased a residence from Love located at 4825 North 39th Street in Milwaukee. The lease ran between November 1, 2013, and October 31, 2014. When Smith rented the residence from Love, Love and HACM entered into an agreement whereby HACM would pay Love $850 a month as rent assistance on behalf of Smith. As noted, Smith was terminated from the Rent Assistance Program on February 28, 2014, and HACM stopped paying Love.

¶ 7. On May 20, 2014, Smith filed a third-party complaint against HACM in the eviction action. In it, Smith alleged that, pursuant to 42 U.S.C. §§ 1983 and 1988, HACM unlawfully terminated her federal Section Eight Housing Choice Voucher Program benefits. She asked for injunctive and declaratory relief along with costs and attorney fees. It was her contention that HACM should have been paying her rent to Love.

After the third-party complaint was filed, the eviction action was transferred to the civil calendar of Judge Christopher Foley. In June 2014, Smith filed a motion in the eviction action seeking an injunction against HACM, prohibiting it from terminating her from the Rent Assistance Program. Judge Foley denied the request.

¶ 8. HACM filed an answer to the third-party complaint and several weeks later filed for summary judgment. Smith also filed a competing motion for summary judgment. Both Smith and HACM filed answers to the summary judgment motion filed by the other side. On August 11, 2014, Judge Foley granted HACM's summary judgment motion dismissing the third-party complaint in a written decision. The judge signed an order stating that HACM "had proper grounds to terminate Ms. Smith's rent assistance based upon her nonpayment of the water bill" and ruled that "nonpayment of the water bill constituted a violation of the Housing Quality Standards, contained in 24 C.F.R. § 982.401."

¶ 9. Later in the certiorari suit, HACM argued that Smith's case should be dismissed because Judge Foley had heard the identical arguments and ruled in favor of HACM. Judge DiMotto, in a written decision dated December 16, 2014, determined that issue preclusion applied, and as a consequence, HACM's decision had to be affirmed. However, the judge also elected to address the merits of Smith's position and affirmed HACM's termination of Smith from the Rent Assistance Program, finding she violated the Housing Quality Standards by not paying the water bill.

¶ 10. On August 4, 2014, an appeal was filed from the eviction action. On January 29, 2015, an appeal was filed from the writ of certiorari denial.

Smith's attorney moved to consolidate the two cases. In an order dated February 20, 2015, the matters were consolidated for dispositional purposes only.

## ANALYSIS

*A. Judge Foley's grant of summary judgment to HACM and dismissal of the third-party complaint was proper.*

¶ 11. As noted, Smith's landlord began an eviction action on April 17, 2014, after Smith was terminated from the Rent Assistance Program and thereafter failed to pay her rent.

¶ 12. Smith filed a third-party suit against HACM on May 20, 2014, in which she claimed that HACM unlawfully terminated her from the federal Section Eight Housing Choice Voucher Program benefits. While conceding that she did not pay her water bill at her previous residence, she contended that this was not a violation of the Housing Quality Standards because her water was never disconnected. Both parties filed motions seeking summary judgment.

¶ 13. Congress enacted the United States Housing Act of 1937 (herein, Act), "to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families." 42 U.S.C. § 1437(a)(1)(A). In 1974, Congress enacted low-income housing assistance, known as Section Eight, as the primary vehicle for the federal government's efforts to provide an adequate supply of low-income housing. 42 U.S.C. § 1437f, as amended.[3] The purpose of the Section Eight program is to aid "low-income families in

---

[3] 42 U.S.C. § 1437f(a). "Section Eight" refers to Section Eight of the revised Act.

obtaining a decent place to live and of promoting economically mixed housing." One of the Section Eight programs is known as the Housing Choice Voucher Program (commonly known as "rent assistance"). *See* 24 C.F.R. § 982.1. The Housing Choice Voucher Program is generally administered by state or local entities known as public housing agencies (PHAs). HUD provides housing assistance funds to the PHAs as well as funding for administration of the programs. *Id.* The family with a voucher pays a reduced rent and may rent a unit anywhere in the United States in the jurisdiction of a PHA that runs a voucher program. *See id.* HACM is one such PHA and operates a low-income housing program within the City of Milwaukee, which is subject to federal regulations and administrative requirements.

¶ 14. The Housing Quality Standards (HQS) are found in 24 C.F.R. § 982.401. Water supply is one of the Housing Quality Standards. *See* § 982.401(a)(2)(ii)(H). As pertinent here, 24 C.F.R. § 982.404 lists the owner and family responsibilities and sets out the PHA remedies. Subsection (a)(4) states that "[t]he owner is not responsible for a breach of the HQS that is not caused by the owner, and for which the family is responsible (as provided in § 982.404(b) and § 982.551(c)). (However, the PHA may terminate assistance to a family because of HQS breach caused by the family.)"

¶ 15. Section 982.404(b), 24 C.F.R., entitled "[f]amily obligation," states that: "(1) The family is responsible for a breach of the HQS that is caused by any of the following: (i) The family fails to pay for any utilities that the owner is not required to pay for, but which are to be paid by the tenant." Smith's lease at her former residence required her to pay the water bill.

672

¶ 16. This case requires us to determine whether Smith was entitled to summary judgment. We do not review the trial court's grant or denial of summary judgment under an erroneous exercise of discretion standard. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Rather, our review is independent of the determination rendered by the trial court, but we apply the same methodology. *See id.*

¶ 17. The summary judgment methodology is well established. *See Zielinski v. A.P. Green Indus., Inc.*, 2003 WI App 85, ¶ 6, 263 Wis. 2d 294, 661 N.W.2d 491.

> In determining whether to grant a motion for summary judgment, the court examines the pleadings to determine whether claims have been stated and material factual issues presented. To make a *prima facie* case for summary judgment, a moving defendant must show a defense that would defeat the plaintiff. If the moving party has made a *prima facie* case for summary judgment, the court must examine the affidavits and other proof of the opposing party [to determine whether summary judgment is appropriate].

3 Jay E. Grenig & Walter L. Harvey, Wisconsin Practice Series: Civil Procedure § 208.3 at 336 (3d ed. 2003) (italics added; footnotes omitted) (citing *Paul v. Skemp*, 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860; *Swatek v. County of Dane*, 192 Wis. 2d 47, 531 N.W.2d 45 (1995)).

¶ 18. Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). The purpose of the summary

judgment procedure is to avoid trials when there is nothing to try. *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981). "On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact." *Cody v. Dane Cty.*, 2001 WI App 60, ¶ 19, 242 Wis. 2d 173, 625 N.W.2d 630 (citation omitted).

■

¶ 19. Smith concedes that she received several notices from HACM that her water bill from her previous residence remained unpaid. She admits to not having paid the water bill before she was terminated from the Rent Assistance Program. She also was afforded due process when she attended a hearing held by an independent hearing examiner to determine whether she was still eligible for the Rent Assistance Program. Her contention is that she did not breach the HQS because the water at her previous home was never disconnected.

¶ 20. Smith argues that the wording of the relevant regulation found in 24 C.F.R. § 982.551(c), which reads "HQS breach caused by family. The family is responsible for an HQS breach caused by the family as described in [24 C.F.R.] § 982.404(b)," should be read in conjunction with § 982.404(b). Section 982.404(b) reads:

(b) Family obligation

(1) The family is responsible for a breach of the HQS that is caused by any of the following:

(i) The family fails to pay for any utilities that the owner is not required to pay for, but which are to be paid by the tenant[.]

Smith notes that the HQS that discusses "water," 24 C.F.R. § 982.401(i), states only:

Water supply —

(1) Performance requirement. The water supply must be free from contamination.

(2) Acceptability criteria. The dwelling unit must be served by an approvable public or private water supply that is sanitary and free from contamination.

There is no mention of unpaid water bills. Smith contends that given its ordinary, common meaning, the word "breach" is defined as "an act of breaking or failing to observe a law, agreement, or code of conduct." *Breach*, NEW OXFORD DICTIONARY (3d ed. 2010). Thus, according to Smith, a standard contained in the Housing Quality Standards regulation had to be broken in order to give rise to a termination of rent assistance. The HQS standards do not specifically mention payment or nonpayment of a water utilities bill. The standards state there must be: (1) a supply of water, sanitary and not contaminated; (2) a bathroom with a flush toilet and a tub or shower with hot and cold running water; (3) and a kitchen sink with hot and cold running water. *See* 24 C.F.R. §§ 982.401(b), (b)(2)(ii), (i). Smith submits that there was water available to meet the HQS in this case; therefore, she did not cause a breach of the Housing Quality Standards.

¶ 21. In sum, Smith argues that there has not been any HQS breach because water was still available at the prior rental unit. She argues that it is only when the water supply has been "breached"—that is, disconnected—that one can be guilty of breaching a HQS. We disagree.

¶ 22. We can find no reference in the Housing Quality Standards to a requirement that the utility—in this case, the water—be disconnected before it violates a Housing Quality Standard. Nowhere in 24 C.F.R. § 982.401 or § 982.404 is there any mention of the water being disconnected. The plain language of the regulations controls the disposition of this lawsuit. Smith's interpretation flies in the face of § 982.404(b)(1)(i), which specifically states it is a breach of HQS if "[t]he family fails to pay for any utilities that the owner is not required to pay for." Here, Smith's situation was exacerbated by the fact that she was given a monthly rent reduction of $62 by HACM to pay her water bill. She never paid it until after she was terminated from the Rent Assistance Program. She chose to spend that money elsewhere. As a result, her former landlord had the unpaid water bill added to her taxes.

¶ 23. Judge Foley was correct in granting summary judgment to HACM. There were no disputed facts, only different interpretations of the federal regulations. The interpretation given by HACM is reasoned and sound and comports with the regulations. Smith's interpretation is unreasonable and unworkable. Smith breached a HQS duty when she failed to pay her water bill.

### B. Issue preclusion applies to Smith's certiorari motion brought against HACM.

¶ 24. Judge DiMotto determined that issue preclusion required him to affirm HACM's termination of Smith from the Rent Assistance Program. However, he elected to address the merits of Smith's argument that no HQS had been breached and therefore she

should be reinstated in the program. On that issue, Judge DiMotto also ruled that Smith had violated one of the HQS concerning the water supply and was properly terminated from the Rent Assistance Program. We agree with Judge DiMotto that issue preclusion applies.

¶ 25. The doctrine of issue preclusion forecloses relitigation of an issue that was previously litigated between the same parties or their privies. *Reuter v. Murphy*, 2000 WI App 276, ¶ 7, 240 Wis. 2d 110, 622 N.W.2d 464. The doctrine derives from the assumption that, in fairness to the defendant, there is a point at which litigation involving the particular controversy must end. *Lindas v. Cady*, 175 Wis. 2d 270, 279, 499 N.W.2d 692 (Ct. App. 1993), *aff'd as modified,* 183 Wis. 2d 547, 515 N.W.2d 458 (1994). Issue preclusion prevents "relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action and reduced to judgment." *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232 (Ct. App. 1996). To determine whether the doctrine of issue preclusion bars a litigant's claim, courts apply a two-step analysis: (1) we ask "whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair." *See Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 728 N.W.2d 693.

██

¶ 26. "In the first step, a circuit court must determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment . . . and whether the determination was essential to the judgment." *Id.*, ¶ 37. The circuit

court's determination under the first step presents a question of law, which we decide on appeal independently of the circuit court but benefiting from its analysis. *Id.*

¶ 27. In the second step, which is required only if the first step is satisfied, "a circuit court must determine whether applying issue preclusion comports with principles of fundamental fairness." *Id.*, ¶ 38. In this step, the court considers five factors, including the opportunity to obtain review of the previous judgment, the quality and extensiveness of the previous proceedings, and public policy. *See Masko v. City of Madison*, 2003 WI App 124, ¶ 6, 265 Wis. 2d 442, 665 N.W.2d 391. "A circuit court's ultimate decision on fundamental fairness is an exercise of discretion." *Rille*, 300 Wis. 2d 1, ¶ 38. "We will affirm a circuit court's exercise of discretion if the circuit court applie[d] the proper standard of law and, using a demonstrated rational process, reache[d] a conclusion that a reasonable court could reach." *Id.*, ¶ 39.

¶ 28. As noted by Judge DiMotto in his decision:

> Curiously, Ms. Smith only addresses the issue of claim preclusion; she does not address issue preclusion. The Court treats Ms. Smith's failure to respond to HACM's argument as a concession that the issue has actually been litigated and determined by Judge Foley in the prior proceeding by a valid judgment, and that the application of the doctrine under the particular circumstances of the case is consistent with fundamental fairness . . . . Therefore, based on the doctrine of issue preclusion, the decision of HACM must be affirmed.

(Internal citation omitted.)

¶ 29. Claiming now that issue preclusion should not be applied to her, Smith points out that the writ of certiorari was filed before the third-party complaint was filed in the eviction action. She submits that although the eviction action was decided first, there is no "prior action." She also argues that because the eviction action was not filed by her that certain "fundamental fairness" factors have not been satisfied. Specifically, she argues that "public policy considerations call for a decision by the Court of Appeals on the regulatory interpretation issues underlying the certiorari appeal as well as the § 1983 appeal with which it was consolidated." We disagree.

¶ 30. In applying the doctrine of issue preclusion, we note that the issue in both cases was identical. Both judges ruled that Smith breached one of the HQSs by failing to pay her water bill, and consequently she was properly terminated from the Rent Assistance Program.[4] Although the timing of these two suits was odd—the certiorari case was filed first but the eviction action was resolved before the certiorari case—there is nothing that prevents the application of issue preclusion to a decision that was adjudicated first but commenced after the filing of the other suit.

¶ 31. Here, the parties and the arguments were the same and the issue raised was identical. We see no fundamental unfairness in refusing to address the same issue that was decided in the earlier matter. Nor do we see any public policy considerations which would prevent the application of the doctrine. As a consequence, we affirm Judge DiMotto's finding that issue

---

[4] It is true that the judge in each case used different language in reaching their decisions; however, both judges reached the identical conclusion.

preclusion defeats Smith's request for a reversal of HACM's decision to terminate her from the Rent Assistance Program program.

*By the Court.*—Orders affirmed.