**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 27, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP709**

Cir. Ct. No. **2021CV200**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

MILTON W. TAYLOR,

    PLAINTIFF-APPELLANT,

  V.

DIRECTOR DOUGLAS BELLILE, DIRECTOR ANN MORAN,
INSTITUTION UNIT MANAGER MIKE KRAUSE,
FOOD SERVICE ADMINISTRATOR ERIN LUND, AND
FOOD SERVICE MANAGER ROBIN STOPPENBOCH,

    DEFENDANTS-RESPONDENTS.

---

       APPEAL from orders of the circuit court for Juneau County: PAUL S. CURRAN, Judge. *Affirmed*.

       Before Blanchard, Kloppenburg, and Taylor, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Milton W. Taylor sued Directors Douglas Bellile and Ann Moran, Unit Manager Mike Krause, Food Service Administrator Erin Lund, and Food Service Manager Robin Stoppenboch (collectively, "the Respondents"), individually and in their capacities as staff at Sand Ridge Secure Treatment Center ("Sand Ridge"), which is operated by a division of the Wisconsin Department of Health Services ("the Department"). Taylor alleged violations of article I, section 6 of the Wisconsin Constitution and of his rights as a patient, under WIS. STAT. § 51.61 (2023-24) and WIS. ADMIN. CODE § DHS 94,[1] based on his having received unheated meals for thirty-eight consecutive days during a period of his residency at Sand Ridge. Taylor appeals the circuit court's orders that denied summary judgment in his favor, granted summary judgment in the Respondents' favor, dismissed Taylor's complaint, and denied Taylor's motion for reconsideration. We reject Taylor's challenges to these orders and affirm.

## BACKGROUND

¶2 The following facts are undisputed and are derived from the pleadings and the parties' summary judgment materials.

¶3 From 2009 until his discharge from commitment in May 2023, Taylor periodically resided at Sand Ridge as a patient committed under WIS. STAT. ch. 980. Sand Ridge is a secure treatment center that houses approximately 190 patients who have been committed as sexually violent persons. Sand Ridge maintains thirteen housing units, each equipped with a microwave for shared patient use with the exception of unit AD. Unit AD is a secure treatment unit and

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version. All references to the Wisconsin Administrative Code are to the January 2026 register.

houses patients who demonstrate "a significant lack of ability to control their behavior," and pose safety concerns to staff, other patients, or themselves. Given these safety concerns, patients residing in unit AD have restricted privileges, and there is no microwave in this unit available for use by patients.

¶4 Sand Ridge provides kosher meals to patients when patients ask for them, following institutional approval. Because Sand Ridge does not maintain a kosher kitchen, patients receive premade kosher meals made at a kosher facility. Patients may choose to warm the meals in the shared microwaves provided in the patient units. Taylor was approved for kosher meals in 2016.

¶5 In November 2018, in order to accommodate additional patients from another treatment facility, patients residing in unit AB, including Taylor, were reassigned to different units. Taylor refused his reassignment to unit BD because of what he asserted was a "volatile environment" and a poor relationship with a staff member in the unit. Taylor was advised that because he refused to move to unit BD, he would be moved to unit AD, where there was no microwave available for patient use. Unit Manager Krause and Food Service Manager Stoppenboch informed Taylor that his kosher meals would not be heated while he resided in unit AD. Taylor continued to refuse to move to unit BD, and he was moved to unit AD.

¶6 Taylor initiated a complaint against Sand Ridge through a multi-stage "Client Rights Grievance Resolution Process" regarding his lack of access to

a microwave and sought "to be provided hot meals daily just like my peers."[2] During the pendency of Taylor's complaint, Taylor continued to refuse to be transferred to unit BD where he would have use of a microwave to heat his meals.

¶7    A client rights facilitator investigated Taylor's complaint and rejected Taylor's allegations in a written decision. In the decision, the facilitator discussed relevant laws and administrative codes considered in denying the complaint, and offered relief options, including having Taylor move to unit BD, where he would have use of a microwave to heat his meals. The decision also advised Taylor that he could initiate stage two of the grievance process by appealing the decision to Director Bellile.

¶8    Taylor initiated stage two of the grievance process, asserting that "[s]imply because my living arrangements within the hospital facilities [do] not grant me personal access to a microwave should not justify that I be provided with cold meal[s]." Bellile affirmed the stage-one decision, concluding that it was "reasonably based in fact and law." Bellile's decision also instructed that Taylor could initiate stage three of the grievance process by filing an appeal.

¶9    Three days later, a spot became available in unit BC, which had a microwave for patient use. Taylor complied with staff directives to move to this unit. Taylor also initiated a stage-three appeal of Bellile's decision, asserting that "[s]imply because circumstances impede my ability to heat meals on my own should not justify that I be served cold meals [for] 38 consecutive days."

---

[2] Taylor also filed a patient request that a microwave be made available in unit AD. Director Moran responded by letter that "we will not be putting a microwave on AD at this time. It's my hope that you find a different housing unit and then you will have access to a microwave and this will no longer be an issue."

¶10 Approximately nine months later, a client rights specialist ("the specialist") who reviewed Taylor's stage-three appeal concluded that, in pertinent part and pursuant to WIS. ADMIN. CODE § DHS 94.24(4)(a) and (d), Taylor's right to be served food "in a pleasant manner" was violated due to the excessive length of time in which he did not receive heated meals.[3] The specialist determined that the violation was due to a misunderstanding between Taylor, who had never communicated that he did not object to his kosher meals being heated in a non-kosher kitchen, and the staff, who had focused on preserving the kosher status of Taylor's meals.

¶11 Although the stage-three decision was in Taylor's favor, Taylor initiated a final stage-four appeal, taking issue with the specialist's conclusion that the violation was due to a misunderstanding rather than "deliberate indifference." An administrator with the relevant division of the Department dismissed Taylor's stage-four appeal on the ground that the matter had already been decided in Taylor's favor and was not appealable further by Taylor unless he filed a lawsuit in the circuit court pursuant to WIS. STAT. § 51.61(7).

---

[3] WISCONSIN ADMIN. CODE § DHS 94.24(4)(a) states:

> **(4)** Food service.
>
> **(a)** Each inpatient shall be provided a nutritional diet which permits a reasonable choice of appealing food served in a pleasant manner.
>
> ….
>
> **(d)** Menu preparation shall take into account customary religious, cultural or strongly-held personal convictions of inpatients.

5

¶12    Taylor commenced this action.[4]    His operative complaint included two sets of claims against the Respondents grounded in negligence and "deliberate indifference" for providing him with unheated meals for thirty-eight days.    For each set of claims, Taylor alleged the following: (1) he had been subjected to cruel and unusual punishment in violation of article I, section 6 of the Wisconsin Constitution; and (2) his rights as a patient were violated under WIS. STAT. § 51.61 and WIS. ADMIN. CODE § DHS 94.

¶13    The parties filed cross-motions for summary judgment.    After a hearing, the circuit court denied summary judgment in Taylor's favor, granted summary judgment in the Respondents' favor, and dismissed the action.    The court determined that no material facts were in dispute and further determined that: Taylor's claims based on a negligence theory fail because he neither alleged nor presented facts to support an assertion that he sustained an injury as a result of being served unheated meals and because the Respondents have discretionary immunity; Taylor's cruel and unusual state constitutional claim fails because he did not allege that he was put at risk of harm or harmed because he was provided with unheated meals; Taylor fails to identify the statutory provision that has been violated in support of his WIS. STAT. § 51.61 claim; and Taylor has abandoned his claim under WIS. ADMIN. CODE § DHS 94 by failing to address the Respondents'

---

[4] Initially, because Taylor brought some of his claims pursuant to federal law, 42 U.S.C. § 1983 and the Eighth Amendment prohibition against cruel and unusual punishment in the United States Constitution, the case was removed to the U.S. District Court for the Western District of Wisconsin.  There, the Respondents raised several affirmative defenses, including the doctrine of discretionary immunity.  The parties eventually stipulated that Taylor's federal claims would be dismissed with prejudice, and that the federal district court would remand the case back to the Juneau County Circuit Court, which issued the decision we review here.

argument that no private cause of action is authorized under this code section.[5] The court also denied Taylor's reconsideration motion.

¶14     Taylor appeals.

## STANDARD OF REVIEW

¶15     We review an order granting or denying a motion for summary judgment independently and apply the same methodology as the circuit court. *Schaidler v. Mercy Med. Ctr. of Oshkosh, Inc.*, 209 Wis. 2d 457, 464-65, 563 N.W.2d 554 (Ct. App. 1997).  It is well established that summary judgment is appropriate if the pleadings and other filings, together with any affidavits, demonstrate no genuine issue of material fact and that a party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2).

## DISCUSSION

¶16     Taylor argues that the circuit court erred in granting summary judgment in the Respondents' favor and dismissing his complaint.  In his operative complaint, Taylor alleges that in providing him unheated meals for thirty-eight consecutive days, Respondents were negligent and deliberatively indifferent, resulting in the following violations under both theories: (1) Taylor's constitutional right to be free from cruel and unusual punishment under article I, section 6 of the Wisconsin Constitution; and (2) Taylor's rights as a patient pursuant to WIS. STAT. § 51.61 and WIS. ADMIN. CODE § DHS 94.

---

[5] The circuit court also concluded that Taylor's claim for injunctive relief is moot due to Taylor's May 2023 commitment discharge.  No party challenges this decision on appeal, and we do not address it further.

¶17 Regardless of whether Taylor intends to root these assertions in negligence or in an intentional tort theory of liability, it is no matter—the claims fail under either approach. We affirm.

## I. Causes of Action in Negligence

¶18 To the extent that Taylor's claims are grounded in negligence, we conclude that the Respondents are entitled to summary judgment dismissing Taylor's negligence claims based on the Respondents' discretionary immunity.

¶19 Wisconsin law provides immunity for claims against governmental bodies, officers, agents, or employees for acts involving the exercise of discretion, referred to as discretionary immunity. WIS. STAT. § 893.80(4) ("No suit may be brought against … its officers, officials, agents or employees … for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."); *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶21, 253 Wis. 2d 323, 646 N.W.2d 314 ("The statute immunizes against liability for legislative, quasi-legislative, judicial, and quasi-judicial acts, which have been collectively interpreted to include any act that involves the exercise of discretion and judgment."). Discretionary immunity "is a concept relevant only to state-law negligence claims" because the statute does not grant immunity to individual officers or employees for intentional acts. *Cody v. Dane County*, 2001 WI App 60, ¶20 n.5, 242 Wis. 2d 173, 625 N.W.2d 630 (citations omitted); § 893.80(4) (granting immunity to governmental entities, not individuals, for intentional torts). Government employees, among others, are afforded discretionary immunity because of their need to exercise their discretion when they act; however, the need for immunity is balanced against the rights of aggrieved parties seeking redress. As a result, four exceptions to discretionary immunity are recognized:

(1) ministerial duties; (2) duties to address a known danger; (3) actions involving medical discretion; and (4) actions that are malicious, willful, and intentional. *Engelhardt v. City of New Berlin*, 2019 WI 2, ¶29, 385 Wis. 2d 86, 921 N.W.2d 714; *Willow Creek Ranch, LLC v. Town of Shelby*, 2000 WI 56, ¶26, 235 Wis. 2d 409, 611 N.W.2d 693.

¶20 In the circuit court, Taylor did not directly challenge Respondents' discretionary immunity defense in his submissions on summary judgment. Rather, Taylor asserted that the Respondents "partially waived" the discretionary immunity defense. The court rejected this assertion due to Taylor's failure to include record cites or supportive legal authority for his partial waiver argument. On appeal, Taylor renews his partial waiver argument concerning discretionary immunity, asserting that the legislature has partially waived the State's ability to claim discretionary immunity by providing a private cause of action pursuant to WIS. STAT. § 51.61(7) for patients who allege violations of their rights under § 51.61(1). However, Taylor fails to include citation to supporting legal authority. Accordingly, we reject Taylor's argument as undeveloped. *Techworks, LLC v. Wille*, 2009 WI App 101, ¶24, 318 Wis. 2d 488, 770 N.W.2d 727.[6]

### II. Claims Based on "Deliberate Indifference"

¶21 Taylor's other framework of asserted liability rests on "deliberate indifference." Taylor asserts that the Respondents are not entitled to summary judgment dismissing his claims based on deliberate indifference because the

---

[6] Because this determination is dispositive of Taylor's claims based on negligence, we do not address any of his additional arguments regarding those claims. *Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Respondents were deliberately indifferent when they provided him with unheated meals for thirty-eight consecutive days, in violation of his constitutional right to be free from cruel and unusual punishment under article 1, section 6 of the Wisconsin Constitution and his rights as a patient pursuant to WIS. STAT. § 51.61 and WIS. ADMIN. CODE § DHS 94.

¶22    Deliberate indifference is not typically alleged as a stand-alone legal claim but most often appears in our jurisprudence as an element of a federal tort claim pursued under 42 U.S.C. § 1983[7] in the context of an Eighth Amendment violation of the U.S. Constitution or, as asserted here, as an element of a claim of cruel and unusual punishment brought under article I, section 6 of the Wisconsin Constitution.[8]   We generally interpret the prohibition of cruel and unusual punishment set forth in our state constitution consistent with the Eighth Amendment in the federal constitution.  *State v. Barbeau*, 2016 WI App 51, ¶27, 370 Wis. 2d 736, 883 N.W.2d 520.

---

[7]  Section 1983 of title 42 of the United States Code reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

All references to the United States Code are to the online register (last viewed Feb. 18, 2026).

[8] The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  Article I, section 6 of the Wisconsin Constitution provides that "[e]xcessive bail shall not be required, nor shall excessive fines be imposed, nor cruel and unusual punishments inflicted."

## A. Cruel and Unusual Punishment

¶23 The Eighth Amendment of the United States Constitution and article I, section 6 of the Wisconsin Constitution prohibit "cruel and unusual punishments," and, in pertinent part, impose duties on government employees, among others, to provide humane conditions of confinement; to "take reasonable measures to guarantee the safety of the inmates"; and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).[9] In order to prove a cruel and unusual punishment constitutional violation, an inmate must show that the deprivation alleged was objectively "sufficiently serious" to pose a risk of harm or actual harm so that a government employee's act or omission results in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834 (citations omitted). Second, an inmate must show that the offending government employee must have been deliberately indifferent to inmate health and safety. *Id.* Under the "deliberate indifference" test, the government employee must be subjectively aware that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 837; *see Cody*, 242 Wis. 2d 173, ¶10 ("'Deliberate indifference' implies 'an act so dangerous that the defendant's knowledge of the risk of harm resulting from the act can be inferred.'" (citation modified)).

---

[9] At the time these claims arose, Taylor was a patient civilly committed to a state institution rather than an inmate in a state prison. But these statuses are similar for the purposes of our analysis of whether Taylor was subjected to cruel and unusual punishment. Like a prison inmate, Taylor was committed to a state institution and depended on government employees to provide humane institutional conditions for him. We treat these statuses similarly for our analysis of Taylor's cruel and unusual punishment claim. *See Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed … in unsafe conditions.").

¶24    We understand Taylor to allege here that the Respondents were deliberately indifferent, in violation of the Wisconsin constitutional prohibition against cruel and unusual punishment, when they provided him with unheated meals for thirty-eight days. Taylor cannot prevail on this claim as a matter of law because he failed to present evidence in his summary judgment materials showing that he was at risk of, or suffered, harm from being provided unheated meals for thirty-eight days.

¶25    It is undisputed that the pre-cooked kosher meals provided to Taylor were shelf-stable, nutritionally balanced, and safe to consume at room temperature. While Taylor's dissatisfaction with the lack of heated meals is understandable, there are not sufficient facts averred on which one could draw a reasonable inference that Taylor was at risk of being harmed or was harmed by the experience.

¶26    Because Taylor has not presented evidence that could support the reasonable inference that he was at risk of harm or was harmed by being provided unheated meals for thirty-eight days, the Respondents are entitled to summary judgment dismissing Taylor's state constitutional cruel and unusual punishment claim as a matter of law.

**B. Patients' Rights Under WIS. STAT. § 51.61 and WIS. ADMIN. CODE § DHS 94**

¶27    Taylor argues that the Respondents were deliberately indifferent when they violated his rights as a patient under WIS. STAT. § 51.61 and WIS. ADMIN. CODE § DHS 94. We liberally construe and interpret these allegations. *See Lewis v. Sullivan*, 188 Wis. 2d 157, 161, 524 N.W.2d 630 (1994) ("It is long-standing precedent of this court that pleadings generally, and the pro se complaints

of prisoners specifically, be construed liberally."). We reject this argument for the following reasons.

¶28 Regarding Taylor's assertion that the Respondents violated his rights as a patient pursuant to WIS. STAT. § 51.61 when they provided him unheated meals, Taylor did not identify in his summary judgment submissions the provision of the patients' rights statute that he alleges was violated. As a result, the circuit court granted summary judgment dismissing his § 51.61 claim.

¶29 Taylor for the first time argues on appeal that the provision that Respondents violated is WIS. STAT. § 51.61(1)(m), which provides that patients:

> [h]ave a right to a humane psychological and physical environment within the hospital facilities. These facilities shall be designed to afford patients with comfort and safety, to promote dignity and ensure privacy. Facilities shall also be designed to make a positive contribution to the effective attainment of the treatment goals of the hospital.

Whether an issue is forfeited or adequately preserved for appeal is a question of law that we review de novo. *State v. Corey J.G.*, 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998). We generally will not address issues raised for the first time on appeal. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.").

¶30 Taylor argues that the circuit court should have been able to identify WIS. STAT. § 51.61(1)(m) as a basis for his patients' rights claim under § 51.61 because of the content of some of the "grievance materials" he submitted in support of his motion for summary judgment. We reject this argument. While a citation to § 51.61(1)(m) does appear in the grievance materials Taylor submitted in support of his summary judgment motion, the citation appears indiscriminately

13

among references to other statutes and administrative regulations. The court was not obligated to scour the record to find support for Taylor's claims or to guess at which provision Taylor intended to argue was violated. *State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999) ("A party must do more than simply toss a bunch of concepts into the air with the hope that either the trial court or the opposing party will arrange them into viable and fact-supported legal theories.").

¶31 In sum on this issue, Taylor presents no compelling argument for us to deviate from the general forfeiture rule, and, accordingly, we reject his argument based on WIS. STAT. § 51.61(m) as forfeited.

¶32 Taylor also argues that his right to be served food in a "pleasant manner," as stated in WIS. ADMIN. CODE § DHS 94.24(4), was violated, which was the conclusion reached at stage three of his administrative appeal. Whether or not that conclusion was correct, Taylor fails to persuade us that § DHS 94 creates a private cause of action to judicially enforce its provisions.

¶33 The Department regulations set forth in WIS. ADMIN. CODE ch. 94 apply, in pertinent part, to patients receiving mental health treatment in a state facility, and the regulations are intended to implement the rights of patients as set forth in WIS. STAT. § 51.61(1). Subchapter III of § DHS 94 sets forth an internal grievance process for any covered individual who alleges that the individual's rights were violated under § 51.61. As detailed, Taylor relied on § 51.61 in pursuing his grievances before filing this lawsuit. *See* §§ DHS 94.40-.54 (describing grievance resolution system requirements and procedures). But neither the language of § DHS 94 nor Wisconsin case law establishes a private right of action under § DHS 94. *See Kranzush v. Badger State Mut. Cas. Co.*,

14

103 Wis. 2d 56, 79-80, 307 N.W.2d 256 (1981) ("But that [an administrative] rule is enacted for the benefit of a particular class of persons is not to say it creates a private right of action.").

¶34    Taylor instead relies on WIS. STAT. § 51.61(7), which establishes a private right of action for violations of patients' rights enumerated in § 51.61(1). Taylor appears to argue that, because WIS. ADMIN. CODE § DHS 94 is promulgated under the authority given to the Department ("the department") as specified in § 51.61(5)(b) and (9), his ability to bring a private cause of action pursuant to § 51.61(7) for violations of patients' rights enumerated in § 51.61(1) extends to alleged violations of provisions in § DHS 94, including Taylor's right to be served meals in a pleasant manner. We reject this argument because it is made for the first time in Taylor's appellate reply brief. *See **Huebner***, 235 Wis. 2d 486, ¶10. Further, we reject it on its merits because, to repeat, there is no explicit private right of action contained in § DHS 94. Like statutes, administrative rules are not deemed to create a private right of action unless there is a clear indication of an intent to create such a right in the language of the rule. *See **Kranzush***, 103 Wis. 2d at 74-75. Taylor identifies no such language.

¶35    In sum on this issue, the Respondents are entitled to summary judgment dismissing Taylor's WIS. ADMIN. CODE § DHS 94 claim.

### III.  Other Arguments

¶36    Taylor advances other arguments in support of his position that the Respondents are not entitled to summary judgment dismissing his complaint. We consider and reject these arguments in turn.

¶37     As best we understand, Taylor appears to argue that, because the Respondents did not appeal the stage-three decision, they conceded that they had violated Taylor's rights and should not be allowed to present their defenses to his claims in this action.  Taylor asserts that allowing the Respondents to dispute his claims in this action "would circumvent" Taylor's rights: "to be informed of his treatment and care and to participate in the planning of his treatment and care" as allowed under WIS. STAT. § 51.61(1)(fm); and to be kept timely informed about the status and outcome of his grievances pursuant to WIS. ADMIN. CODE § DHS 94.44(6)(a).  We reject these assertions for the following reasons.

¶38     Taylor cites no legal authority supporting the proposition that the Respondents were obligated to appeal the stage-three decision in order to defend themselves in a subsequent lawsuit.  Rather, Taylor, as the plaintiff, is responsible for identifying, supporting, and proving his legal claims, to which the Respondents may respond and raise appropriate defenses.  *See, e.g.*, WIS. STAT. § 802.04 (specifying pleading standards for plaintiffs); WIS. STAT. § 802.06 (specifying the timing and content of defenses).  Similarly, Taylor fails to explain how or why provisions establishing his rights to be informed and to participate in treatment planning and to be timely informed about the status of an administrative grievance act as a bar or prohibition to the Respondents' ability to raise appropriate defenses in a legal action.  Because Taylor fails to develop his arguments with citation to supporting legal authority, we reject his arguments.  *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider unsupported or undeveloped arguments).

¶39     Taylor also argues that ***Schaidler***, 209 Wis. 2d 457, supports his assertion that the Respondents' failure to challenge the stage-three determination constitutes an admission by the Respondents that they violated Taylor's rights.

However, *Schaidler* does not assist Taylor and is factually and legally distinct because it involves the defendant's concession in circuit court proceedings that Schaidler's patient rights under WIS. STAT. § 51.61 had been violated. *See id.* at 462, 467-68. Here, in contrast, the Respondents made no concession or admission before the circuit court. Rather, the stage-three conclusion was just that—a conclusion, rather than an admission of guilt or acknowledgment of liability by the Respondents. Taylor fails to develop his argument, with citation to supporting legal authority, that the Respondents' failure to appeal an internal, administrative decision, serves as an admission of Taylor's claims in a civil legal proceeding.

¶40     Taylor also asserts that the stage-three decision is entitled to deference by the courts in this action. Taylor does not support this assertion with cites to supporting legal authority. *See Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶3, 382 Wis. 2d 496, 914 N.W.2d 21 (ending the practice of deferring to administrative agencies' conclusions of law). Regardless, the stage-three conclusion does not change our determination that the Respondents are entitled to summary judgment dismissing Taylor's complaint for all of the reasons stated above.

¶41     Taylor also argues that in granting summary judgment in favor of the Respondents, the circuit court improperly viewed the evidence in the light most favorable to the Respondents instead of in the light most favorable to him as the nonmoving party. However, this ignores our standard of review. We review the court's summary judgment decision de novo, and we have explained why we conclude that Taylor has failed to present evidence showing disputed material facts or to advance supported legal arguments rebutting the Respondents' argument that they are entitled to summary judgment as a matter of law.

¶42 Taylor also argues that the Respondents are not entitled to summary judgment because of the following two allegations of fact: the Respondents told Taylor that the meals at issue would not be heated, and Taylor had a sound explanation—his conflict with a unit staff member—justifying his refusal to transfer to unit BD, which had a microwave. However, Taylor fails to show that these two allegations are material to our analysis set forth above explaining why the Respondents are entitled to summary judgment dismissing his complaint.

### IV. Reconsideration Motion

¶43 Following the summary judgment ruling, Taylor filed a motion for reconsideration which the circuit court denied, stating that Taylor's "motion [for reconsideration] doesn't really address any problems [with the summary judgment decision] at all." On appeal, Taylor makes no argument about the court's denial of his motion for reconsideration, so we deem it abandoned and do not address it. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised on appeal, but not briefed or argued, is deemed abandoned.").

### CONCLUSION

¶44 For the reasons explained above, we affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.